UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ANGELA BODMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Docket No. 10-cv-105-GZS |
| | ) |
| STATE OF MAINE, DEPARTMENT | ) |
| OF HEALTH AND HUMAN SERVICES | ) |
| | ) |
| Defendant. | ) |

ORDER ON MOTION TO DISMISS

Before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint (Docket # 4). For the reasons that follow, the Court GRANTS in part and DENIES in part Defendant's Motion.

**I. LEGAL STANDARD**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) tests the "legal sufficiency" of a complaint. Gomes v. Univ. of Me. Sys., 304 F. Supp. 2d 117, 120 (D. Me. 2004). The general rules of pleading require "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal alteration and citation omitted). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotation and

citation omitted).  In distinguishing sufficient from insufficient pleadings, which is "a context-specific task," the Court must "draw on its judicial experience and common sense."  Id. at 1950.

The Court must accept as true all well-pleaded factual allegations in the Complaint and draw all reasonable inferences in Plaintiff's favor.  Gargano v. Liberty Int'l Underwriters, Inc., 572 F.3d 45, 48 (1st Cir. 2009).  In the following section, the Court lays out the facts according to this standard.

## II.  FACTUAL BACKGROUND

Plaintiff Angela Bodman worked for the State of Maine Department of Health and Human Services ("Maine DHHS" or "Defendant") for just shy of four and a half years, starting in February 2004 and culminating with her resignation on June 20, 2008.  As a Family Independence Specialist in its office in Portland, Maine, Bodman worked with low-income individuals and families.  Bodman had a "stellar" employment record at Maine DHHS prior to her resignation.  (Compl. (Docket # 2) ¶ 30.)

While working at Maine DHHS, Bodman began dating one of her co-workers, Michael Damon.  Damon left his position at Maine DHHS at some point during the course of this relationship; he remained in the social services field, however, and continued to have professional interactions with various individuals in Bodman's office.  After several months, Bodman attempted to extricate herself from what had become an abusive relationship with Damon.

But Damon refused to leave Bodman alone after the relationship ended, and instead "harassed [her], vandalized her property, slashed her tires, defamed her, and repeatedly violated her privacy at work and home."  (Compl. ¶ 9.)  Damon sent email "tirades" to Bodman's work account, sometimes several times a day, even after she requested for him to stop.  (Compl. ¶ 10.)

Bodman's efforts to cease relations with Damon were "complicated" by the fact that "Damon's work required him to frequent ... Bodman's place of business." (Compl. ¶ 8.) On November 5, 2007, Bodman sought and obtained a temporary Protection from Abuse Order ("PFA") against Damon ordering him to cease all contact with her. After a full hearing, the temporary PFA became permanent on December 28, 2007.

Bodman informed Maine DHHS of both Damon's conduct as well as her efforts to secure the PFA. Maine DHHS made some initial, but unsuccessful, attempts to protect her from contact with Damon in the work setting. Maine DHHS subsequently "gave up all efforts to protect" Bodman, (Compl. ¶ 13.), ignoring her safety concerns and failing to take any additional steps to protect her from future harassment by Damon in the workplace.

On May 7, 2008, Bodman sent what she considered to be a confidential email request for Damon to be banned from participating on the Maine DHHS softball team due to her concern that such contact with Maine DHHS staff in a non-professional context would only accelerate and perpetuate the harassment. The Maine DHHS employee who received this email forwarded it on to Damon. Based on this email, Damon sought a court order amending the PFA to allow his participation on the team.[1]

Bodman again contacted her supervisor and other staff at Maine DHHS regarding her concerns about the ongoing professional and quasi-professional relationship between Damon and Maine DHHS staff. Because Bodman felt that she was not offered any solutions, she filed a Union grievance. Maine DHHS did nothing in response to this grievance, and instead denied its existence. Feeling that she was left with no other recourse, Bodman resigned effective June 20, 2008. Bodman filed claims with the Maine Human Rights Commission and the Equal

---

[1] Apparently Damon then abandoned the effort and did not participate on the team. (Def.'s Mot. to Dismiss (Docket # 4) at 4 & Ex. A.) ("Mot. to Dismiss").

Employment Opportunity Commission.  MHRC denied her claim and issued her a right to sue letter on October 29, 2009.  She then filed the pending complaint in Cumberland County Superior Court on December 3, 2009.  Defendant responded by removing the matter to this Court and filing the pending motion to dismiss.

**III.  DISCUSSION**

Based on the foregoing factual allegations, Bodman alleges that Defendant violated state and federal law when it failed to take meaningful steps to enforce her Protection from Abuse Order in the workplace and thereby protect her from ongoing harassment by an ex-Maine DHHS employee.  Before turning to Defendant's substantive arguments as to why Plaintiff has failed to state a claim, the Court must note that Plaintiff's Complaint is not a model of clarity.  Plaintiff styles the Complaint as having four separate counts: (1) "Constructive Discharge" with no statutory reference; (2) "Hostile Work Environment" with reference to "both the Maine Human Rights Act and Title VII of the Civil Rights Act of 1964;" (3) "Sexual Harassment" with reference to "both the Maine Human Rights Act and Title VII of the Civil Rights Act of 1964;" and (4) "Violation of the Whistleblower's Protection Act" with reference to "the state and federal Whistleblower's Protection Acts."  (Compl. at 4-6.)  As to all four counts, Bodman seeks money damages and "any other relief that is just and proper under the circumstances." (Id.)  The Court will consider each of Bodman's claims, but will do so in a slightly different order.

**A. Plaintiff's Title VII and MHRA Claims (Counts I-III)**

In Counts I-III of the Complaint, Bodman alleges that when Maine DHHS failed to respond to her requests for protection from abuse in the workplace, she was subjected to harassment and a hostile work environment, which led to her constructive discharge, all in

violation of the Maine Human Rights Act, 5 M.R.S.A. §§ 4551-4634 ("MHRA") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e-2, et. seq. ("Title VII").[2]

### 1. Hostile Work Environment (Count II)

In Count II, Bodman alleges that Defendant subjected her to a hostile work environment in violation of both federal and Maine law. To prove a claim of hostile work environment, a plaintiff must establish six elements:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

Agusty-Reyes v. Dep't of Educ., 601 F.3d 45, 52 n.6 (1st Cir. 2010). "'Subject to some policing at the outer bounds,' it is for the jury to weigh those factors and decide whether the harassment was of a kind or to a degree that a reasonable person would have felt that it affected the conditions of her employment." Marrero v. Goya of P.R., Inc., 304 F.3d 7, 18 (1st Cir. 2002) (citation omitted). While "[t]he harassing conduct need not be overtly sexual in nature," to constitute hostile work environment sexual harassment, Rosario v. Dep't of Army, __ F.3d __, No. 08-2168, 2010 WL 2179783, at *4 (1st Cir. June 2, 2010), courts have long stressed that the hostile work environment standards are "sufficiently demanding to ensure that Title VII does not become a general civility code," Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal quotation and citation omitted).

---

[2] To the extent Plaintiff makes the same claims under both the MHRA and Title VII, the same analysis applies. See, e.g., Forrest v. Brinker Int'l Payroll Co., 511 F.3d 225, 228 n.1 (1st Cir. 2007) ("Maine courts apply the MHRA in accordance with federal anti-discrimination law. Accordingly, the magistrate judge considered Forrest's MHRA claim and Title VII claim concurrently; we will do the same.") (internal citation omitted); Watt v. UniFirst Corp., 969 A.2d 897, 903 n.4 (2009) ("It is appropriate to look to analogous federal case law for guidance in the interpretation of the [MHRA]."). Thus, the Court's analysis while focusing on federal law applies with equal force to Plaintiff's state law claims.

In the pending motion, Defendant argues that Bodman fails to allege sufficient facts to satisfy the third required element of a sexual harassment claim—*i.e.*, she makes no showing that the above-described harassment was directed at her because of her gender.[3] Bodman's Complaint identifies only in vague terms a few incidents that occurred after she ended her relationship with Damon. These incidents fall into two categories: (1) the conduct of Damon himself (i.e., he "harassed" Bodman, "vandalized" her property, "slashed" her tires, directed repeated "tirades" at her work email account, and attempted to participate on the Maine DHHS softball team);[4] and (2) the conduct of Maine DHHS employees and/or supervisors (*i.e.*, an employee forwarded to Damon an email regarding Bodman's concerns involving the softball league and a lack of response to Bodman's requests for protection from harassment in the workplace, including her Union grievance).

Defendant asserts that these allegations are insufficient to survive a motion to dismiss because "[s]imply being a woman is not enough to state a claim[; t]he harassment must have been directed at her *because of* her protected class status." (Def.'s Reply (Docket # 7) at 2.) In support of this argument, Maine DHHS relies exclusively upon Forrest v. Brinker International Payroll Co., 511 F.3d 225 (1st Cir. 2007). Forrest involved a plaintiff who claimed a co-worker with whom she had an on-again, off-again romantic relationship created a hostile work environment. The District Court found that the plaintiff only proffered evidence of "personal animosity stemming from their failed relationship," and this was insufficient to survive summary

---

[3] Defendant rests its motion to dismiss Count II solely on its argument that Plaintiff has failed to allege sufficient facts to satisfy the "based upon sex" prong of the prima facie case of hostile work environment. (Mot. to Dismiss at 5-6.) ("Plaintiff has failed to allege sufficient facts to satisfy the third element. … As a result, the Court need not look any further to consider the adequacy of the response of Maine DHHS."). Accordingly, the Court will assume for the purposes of deciding this motion that Plaintiff alleges sufficient facts to establish the rest of her prima facie case of hostile work environment, including that the conduct was both "subjectively and objectively offensive," and that there is some basis for employer liability.

[4] (Compl. ¶¶ 9-10, 16-17.) It is unclear from the Complaint whether all of this conduct actually occurred at Bodman's workplace or during working hours.

judgment on a Title VII claim. Id. at 229. The First Circuit reversed this finding, emphasizing that "[n]owhere does prior case law suggest that certain types of discriminatory behavior, held to constitute gender-based harassment in other cases, may not constitute gender-based harassment when the parties had previously engaged in a romantic relationship." Id. at 230.[5] The First Circuit stressed that in cases involving a prior relationship, just as in all Title VII hostile work environment cases, it was necessary instead for the Court to examine the specific conduct alleged in order to determine whether improper gender bias could be inferred. Id. at 229. The Forrest Court concluded that the use of sexually degrading, gender-specific epithets, with which the former boyfriend barraged Forrest at work, was harassment "based upon sex" and therefore prohibited under Title VII. Id. at 230.

The First Circuit's analysis in Forrest reflects its review of the district court's grant of summary judgment. Thus, the parties before it had the opportunity to engage in discovery and were expected to present a complete factual record.[6] By contrast, this case is at the preliminary motion to dismiss stage. As such, the factual record before the Court is by its very nature incomplete. See Fed.R.Civ.P. 8(a)(2) (requiring only that a Complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief"). In relying exclusively upon the Forrest case, Defendant fails to acknowledge that the determination of whether an issue is trialworthy simply is not the same as the determination of whether a plaintiff states a claim upon

---

[5] The First Circuit ultimately affirmed the lower court's grant of summary judgment, however, holding that "no reasonable jury could conclude that [the employer's] response was not prompt and appropriate" and therefore no liability could be imposed on the employer. Id. at 232.

[6] Indeed, a review of cases assessing the impact of a prior relationship on the "based upon sex" prong reveals that such an analysis generally occurs at the summary judgment stage or later in the proceedings. See, e.g., Lipphardt v. Durango Steakhouse of Brandon, Inc., 267 F.3d 1183, 1188-89 (11th Cir. 2001) (within the context of reviewing a motion for judgment as a matter of law, finding that a former intimate relationship between co-workers did not preclude claim for retaliatory discharge); Stepheny v. Brooklyn Hebrew Sch. for Special Children, 356 F. Supp. 2d 248, 262-64 (E.D.N.Y. 2005) (granting motion for summary judgment where, inter alia, allegedly harassing statements by co-worker were motivated solely by his anger toward the plaintiff following their failed relationship).

7

which relief can be granted. See, e.g., Hercik v. Rodale, Inc., No. 03-CV-06667, 2004 WL 1175734, at *4 (E.D. Pa. May 27, 2004). In short, "a plaintiff is not required to prove her entire case in her pleadings." May v. Schering Corp., Civ. No. 09-170-B-W, 2010 WL 377012, at *6 (D. Me. Jan. 26, 2010) (citation omitted). While the Defendant ultimately may be correct that the Plaintiff will struggle to prove that Damon's harassment was "because of her gender," at this stage Bodman need only state factual allegations that make it plausible that the harassment was based upon sex. See, e.g., id., at *8 ("These allegations [of harassment] are sufficient to raise a plausible entitlement to relief even if the allegations ultimately would not be sufficient to *prove* that matters of sex contributed to [plaintiff's] downfall at [work].").

Looking at the facts alleged in the complaint in the light most favorable to Plaintiff, the Court finds there to be sufficient circumstantial evidence to suggest that Damon's behavior towards Bodman was triggered by more than personal animosity. "Presumably the prior relationship would never have occurred if the victim were not a member of the sex preferred by the harasser, and thus the victim's sex is inextricably linked to the harasser's decision to harass." Forrest, 511 F.3d at 229. More importantly, after the record is further developed, it is certainly plausible that even seemingly gender-neutral harassment such as tire slashing may shed important light on the determination of whether the complained-of conduct was "sufficiently severe or pervasive so as to alter the conditions of the plaintiff's employment and create an abusive work environment." Agusty-Reyes, 601 F.3d at 52 n.6. For, as recently reaffirmed by the First Circuit:

> The fact that certain of the complained-of conduct appeared to have no sex-based connotation at all – for example, throwing her food away and removing items from her desk – does not diminish to force of the evidence indicating gender-based animus. Indeed, as we have noted, such acts may be added to the mix in assessing a hostile work environment claim.

Rosario, 2010 WL 2179783, at *6. See also O'Rourke v. City of Providence, 235 F.3d 713, 730 (1st Cir. 2001) ("[I]ncidents of nonsexual conduct—such as work sabotage, exclusion, denial of support, and humiliation—can in context contribute to a hostile work environment[.]").

While the Court is unsure that Bodman ultimately will prove her entire prima facie case—and particularly whether she will be able to overcome the substantial hurdle of establishing that there is some basis for imputing to Defendant liability for the harassing conduct of Damon, a non-employee[7]—the Court finds that the Plaintiff states a plausible claim of hostile work environment sexual harassment under Title VII and the MHRA. Therefore, the Court will DENY Defendant's Motion as to Count II.

### 2. Sexual Harassment (Count III)

Notably, Defendant does not have a stand-alone argument for dismissal of Count III. Rather, Defendant primarily seeks to dismiss this Count based on the same argument as Count II. Nonetheless, in the Court's view, Plaintiff has failed to state a claim for sexual harassment above and beyond her hostile work environment claim just discussed.[8] Thus, the Court concludes that

---

[7] Once again, this argument is not a basis for the pending motion to dismiss. Moreover, the First Circuit has made clear that there are at least some circumstances under which an employer may be found liable for the sexually harassing conduct of a non-employee. See Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d 848, 854-55 (1st Cir. 1998) (finding that "employers can be liable for a customer's unwanted sexual advances, if the employer ratifies or acquiesces in the customer's demands" under both a theory of *quid pro quo* and hostile work environment sexual harassment). Other circuits have further clarified that an employer can be held responsible for the hostile work environment harassment of a non-employee if the plaintiff can prove that her employer knew or should have known of such actions and failed to take corrective measures. See, e.g., Galdamez v. Potter, 415 F.3d 1015, 1022 (9th Cir. 2005) ("An employer may be held liable for the actionable third-party harassment of its employees where it ratifies or condones the conduct by failing to investigate and remedy it after learning of it.") For, "[t]he employer's responsibility is to provide its employees with nondiscriminatory working conditions. The genesis of inequality matters not; what *does* matter is how the employer handles the problem." Dunn v. Washington County Hosp., 429 F.3d 689, 691 (7th Cir. 2005) (finding that a hospital could be required to protect a nurse employee from harassment by a doctor even though the doctor was not an employee of the hospital).

[8] In addition to sexual harassment based on hostile work environment, the law does recognize *quid pro quo* sexual harassment. See, e.g., Soto-Martinez v. Colegio San Jose, Inc., Civ. No. 08-2374, 2009 WL 2957801, at *2 n.1 (1st Cir. Sept. 9, 2009) (comparing the two theories). *Quid pro quo* sexual harassment requires a showing that a supervisor or employee uses his/her "superior position to extract sexual favors from a subordinate employee, and if denied those favors, retaliates by taking action adversely affecting the subordinate's employment." O'Rourke, 235 F.3d at 728. None of Plaintiff's allegations can be read to support such a claim for *quid pro quo* sexual harassment.

Count III is simply duplicative and in an effort to establish clarity in the claims remaining, the Court will GRANT the Motion to DISMISS as to Count III.

### 3. Constructive Discharge (Count I)

In Count I, Bodman again recites the same legal theory that she also states in Counts II and III. She alleges that Damon's sexual harassment led to the creation of a hostile work environment. She further contends that as a result of Maine DHHS's failure to act in response to her complaints about Damon's behavior, her working conditions became so intolerable that she was left with no choice but to resign from her position—that is, she was constructively discharged. Maine DHHS points out that Bodman fails to identify under which state or federal law she is bringing a claim of "constructive discharge." Defendant does not allege such an omission necessarily to be fatal. Rather, Defendant asserts that the Court should dismiss Count I because constructive discharge is not a "stand-alone claim." (Def.'s Reply at 2 n.1.)

Constructive discharge technically is a "compound" rather than an independent claim. See Pa. State Police v. Suders, 542 U.S. 129, 147 (2004). Thus, "[a]lleging constructive discharge presents a 'special wrinkle' that amounts to an additional prima facie element." Landrau-Romero v. Banco Popular De Puerto Rico, 212 F.3d 607, 613 (1st Cir. 2000) (citation omitted). A plaintiff who is successful in proving constructive discharge may be entitled to recover two sets of damages: damages flowing from the hostile work environment itself (i.e., compensatory damages and possibly punitive damages) as well as damages flowing from the loss of her job (most notably back pay and front pay). See generally 42 U.S.C.A. § 1981a(a)(1).[9] As

---

[9] Perhaps for this reason, courts within the First Circuit have considered independently claims of constructive discharge. See, e.g., Landrau-Romero, 212 F.3d at 613 (considering failure to promote and constructive termination claims that were "separable" from plaintiff's claim of race-based harassment); Tardif-Brann v. Kennebec Valley Cmty. Action Program, No. Civ. 04-132-B-S, 2005 WL 1712421 (D. Me. July 21, 2005) (on a motion for summary judgment, reviewing separately the plaintiff's hostile work environment, retaliation and constructive discharge claims).

such, the Court is not persuaded that it is inappropriate for the Plaintiff to proceed with a separate count of constructive discharge.

The Court remains cognizant, however, that the constructive discharge standard is more onerous than the hostile work environment standard. From the facts alleged in the complaint, it is plausible that Bodman suffered from "working conditions so intolerable that a reasonable person would have felt compelled to resign." Pennsylvania State Police, 542 U.S. at 147. Plaintiff alleges that she informed Maine DHHS of Damon's harassing behavior and her court order. Her complaint makes clear that Damon continued to have both professional and non-professional interactions (*e.g.*, the softball league) with Maine DHHS employees even after she informed her employer of the harassing conduct. She additionally alleges that Maine DHHS made few—if any—efforts to protect her from harassment by Damon in the workplace. Finally, she states that she only resigned from her position after she first filed a Union grievance that received no response.

If these facts are assumed to be true, as they must be at this stage in the proceeding, the Plaintiff has proffered sufficient facts to establish such intolerable working conditions that a "reasonable person in [her] shoes would have felt compelled to resign," Lee-Crespo v. Schering-Plough Del Caribe Inc., 354 F.3d 34, 45 (1st Cir. 2003) (citation omitted), and that as such, she was constructively discharged. See, e.g., Hall v. FMR Corp., 667 F. Supp. 2d 185, 202 ("A constructive discharge may also occur when an employer effectively prevents an employee from performing her job."). As such, the Court DENIES Defendant's motion to dismiss Count I.

### B. Plaintiff's Whistleblower Protection Act Claim (Count IV)[10]

What remains is Plaintiff's allegation in Count IV that Maine DHHS violated Maine's Whistleblowers' Protection Act ("MWPA"), 26 M.R.S.A. § 831 et seq., when, in response to her reports of unlawful conduct and harassment to her supervisors, it "imposed more burdens on [her], including harsh treatment, unlawful discrimination[,] shame, additional harassment, exposure to further violent acts, and derogatory conditions." (Compl. ¶ 46.) Bodman additionally asserts that, because Maine DHHS's "reaction to her reporting [of] her treatment was to increase the severity of the unlawful acts," she "was forced to resign her position to protect herself." (Compl. ¶ 47.) Defendant argues that Bodman fails to establish a prima facie retaliation claim for a violation of the MWPA.

"The MHRA provides a right of action to persons who have been subject to unlawful discrimination, including whistleblowers who have suffered retaliatory discharge or other adverse employment actions." Costain v. Sunbury Primary Care, P.A., 954 A.2d 1051, 1053 (Me. 2008). See also 5 M.R.S.A. §§ 4572(1)(A), 4621; 26 M.R.S.A § 833. The Law Court has established that there are three elements to a claim of unlawful retaliation: "(1) the employee engaged in activity protected by the statute; (2) the employee was the subject of an adverse employment action; and (3) there was a causal link between the protected activity and the adverse employment action." Costain, 954 A.2d at 1053. This District recently remarked in

---

[10] Although Plaintiff's Complaint references a federal Whistleblower Protection Act, in moving to dismiss Count IV, Defendant correctly points out that there is no federal Whistleblower's Protection Act that applies to state government employees. While it is possible that Bodman intended to bring a retaliation claim under some federal statute such as Title VII, see 42 U.S.C. § 2000e-3(a), she makes no effort to address the established framework for such a claim. See, e.g., Simas v. First Citizens' Fed. Credit Union, 170 F.3d 37, 44 (1st Cir. 1999) ("Many of these federal anti-retaliation statutes require the claimant to make a three-part prima facie showing that: (1) the claimant engaged in the protected activity (*e.g.,* filed a complaint or reported information to the government); (2) the defendants subjected the claimant to some materially adverse employment action, and (3) a causal connection existed between the protected activity and the adverse action."). Defendant Maine DHHS must be given "fair notice of what the … claim is and the grounds upon which it rests," Twombly, 550 U.S. at 555 (citation omitted). The Court therefore finds that Plaintiff has failed to state any federal claim in Count IV of her Complaint.

passing that establishing such a prima facie case is not a demanding task. Osher v. Univ. of Maine Sys., __ F. Supp. 2d __, No. CV-09-73-B-W, 2010 WL 1409431, at *10 (D. Me. Apr. 7, 2010) (citations omitted).

Under the MWPA, an employee has engaged in protected activity if she has "report[ed] orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States[.]" 26 M.R.S.A. § 833(1)(A). Bodman primarily alleges that her reporting of Damon's sexual harassment to her employer is protected activity under the MHRA. But, as asserted by Defendant, the Law Court specifically has held that "the protection afforded by the MWPA" is "unambiguously limit[ed] … to (1) employees (2) who report to an employer (3) about a violation (4) committed or practiced by *that employer*." Costain, 954 A.2d at 1054 (emphasis supplied). Under this precedent, it is clear that Plaintiff's reports of harassment by an individual who was not an employee cannot serve as the basis for a claim under MWPA.[11]

There are, however, at least two instances where the Plaintiff plausibly did engage in protected activity: (1) she complained to her "supervisor and other staff" when a co-worker forwarded to Damon her email requesting that Damon be excluded from participation on the agency softball team because of his harassment; and (2) she filed a Union grievance, the contents of which the Court assumes were related to both the softball incident and the harassment in her work environment, to which her employer did not respond. Taking the facts pled by the Plaintiff as true, Bodman complained about conduct by another employee, which she considered to be a breach of confidentiality, to an individual who could address the violation; this satisfies the

---

[11] Plaintiff makes no effort to argue that Damon's harassing conduct can be imputed to her employer.

protected activity element of the MWPA prima facie case. See, e.g., Osher, 2010 WL 1409431, at *12; Roussel v. St. Joseph Hosp., 257 F. Supp. 2d 280, 286 (D. Me. 2003).[12] The Court also finds that the filing of a union grievance falls within the MWPA's definition of protected activity. See 26 M.R.S.A. § 833(1)(A). See generally Osher, 2010 WL 1409431, at *12 n.17 (stating in *dicta* that the plaintiff's complaint to her union representative about her department chair's alleged sexual orientation discrimination "is presumably protected activity").

Defendant next argues that Plaintiff does not plead sufficient facts to establish the additional prongs of her MWPA claim because she fails to establish "that she had no reasonable alternative to resignation because her employer created intolerable working conditions." (Mot. to Dismiss at 7.)[13] The Court disagrees. With both her co-worker's email to Damon and the non-response to her Union grievance, Plaintiff has described intense frustration flowing from what she perceived to be evidence of her employer taking the side of her abuser. Following the same analysis cited above, see discussion of Plaintiff's Constructive Discharge Claim (Count I), *supra*, Plaintiff has described a sufficiently severe level of tension to create a working environment that a reasonable person could consider to be intolerable. See also Blake, 868 A.2d at 237-38 ("When determining whether a hostile work environment claim exists, the court must look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it

---

[12] Notably, the First Circuit has emphasized that "[n]either state nor federal law requires that the reported condition, activity, or practice actually *be* unsafe or illegal; under either scheme, an employee's reasonable belief that it crosses the line suffices, as long as the complainant communicates that belief to his employer in good faith." Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 261-62 (1st Cir. 1999) (citing Bard v. Bath Iron Works, 590 A.2d 152, 154 (Me. 1991) (explicating relevant MWPA requirements)).

[13] The Defendant does not challenge as a general premise that constructive discharge due to a hostile working environment can constitute an adverse employment action pursuant to the MWPA. The Court notes that the Law Court has yet to find opportunity to decide this issue. See Blake v. State, 868 A.2d 234, 238 (2005) ("We have not yet addressed whether a hostile work environment claim can constitute an adverse employment action pursuant to the [M]WPA.")

unreasonably interferes with an employee's work performance.") (citations and internal quotations omitted). Thus, the Court holds that the Plaintiff states a claim under the state Whistleblowers' Protection Act, and Defendant's Motion to Dismiss as to Count IV is DENIED.

## IV. CONCLUSION

As explained above, Defendant's Motion to Dismiss is hereby GRANTED IN PART and DENIED IN PART. In accordance with this ruling, Count III and any federal claim in Count IV are hereby DISMISSED for failure to state a claim. The Court will allow Plaintiff to proceed with her hostile work environment claim (Count II), her constructive discharge claim (Count I) and her claim under the MWPA (Count IV).

SO ORDERED.

/s/ George Z. Singal  
United States District Judge

Dated this 22nd day of June, 2010.